## Weitzel, Appellant, v. Zane.

*Mechanic's lien—Defenses—Agreement by contract with creditors—Act of June 4, 1901, Section 36, P. L. 431.*

Where a firm of contractors makes an assignment for the benefit of creditors under the Pennsylvania Insolvency Act, and subsequently enter into an agreement with their creditors by which the latter agree to refrain from bringing any action or suit against the insolvents and to release and exonerate them from any and all further liability, and to release the right to file liens against any of the real estate involved, an owner of real estate against which one of the creditors subsequently files a mechanic's lien, may set up the agreement as a defense under Section 34 of the Act of June 4, 1901, P. L. 431, which provides that "any defense which will defeat the action were it a personal one against the contractor to recover for the particular work or materials required to be done or furnished under the contract with the owner......shall wholly defeat the claim"; and this is the case although the agreement provided that creditors who "hold collateral security......shall have all the rights and privileges in their said collateral."

In such a case the owner may set up the agreement as a defense without showing payment to the contractor for materials, or any other equity.

Argued Dec. 14, 1914.    Appeal, No. 256, Oct. T., 1914, by plaintiffs, from judgment of C. P. No. 3, Philadelphia Co., March T., 1912, No. 2175, M. L. D., on verdict for defendants in case of P. Elmer Weitzel, et al., trading as P. Elmer Weitzel Brothers & Sons, v. Anthony M. Zane, owner or reputed owner, and George W. and Judson M. Zane, trading as G. W. and J. M. Zane, Contractors. Before RICE, P. J., ORLADY, HEAD, KEPHART and TREXLER, JJ.    Affirmed.

Scire facias sur mechanic's lien.    Before FERGUSON, J.

The facts are stated in the opinion of the Superior Court.

At the trial the court gave binding instructions for defendants.

Verdict and judgment for defendants. Plaintiff appealed.

*Error assigned* was in giving binding instructions for defendants.

*Wayne P. Rambo,* with him *Robert Maier* and *Ormond Rambo.*—The terms of the agreement among the creditors of G. W. and J. M. Zane, in the insolvency proceedings providing for the administration of the insolvent estate, and for the artificial discharge of the insolvents from personal liability, and reserving all rights as to collateral, does not prevent the plaintiffs from maintaining their lien against real estate of a third person, viz: A. M. Zane: Sterling Bronze Co. v. Syria Imp. Assn., 226 Pa. 475.

The agreement made among creditors in the insolvency proceedings, whereby the insolvents were to be artificially discharged from personal liability from their debts, is not a defense within the meaning of the mechanic's lien law of 1901, considering all sections of the mechanics' law, not Section 36 alone: Clark v. Israel, 6 Binney 391; Tinstman v. Flenniken, 6 W. N. C. 29; Galbraith v. Fisher, 22 Pa. 406; Reeser v. Johnson, 76 Pa. 313; Keller v. Denmead, 68 Pa. 449; Kean v. Franklin, 5 S. & R. 147.

Anthony M. Zane, the owner of the real estate subject to the lien has not a legal right or status to plead the agreement entered into among the creditors of G. W. and J. M. Zane in the insolvency proceedings without showing or offering to show that he, A. M. Zane, either paid for the materials or in some other way is legally or equitably entitled to plead the benefits of the agreement among the creditors in the insolvency proceedings: Moyer v. Dewey, 103 U. S. 301; In re Emslie, 102 Fed. Rep. 291; In re Kerby-Dennis Co., 94 Fed. Rep. 818; In re Burton, 29 Fed. Rep. 637; Phillips v

Solomon, 42 Ga. 192; Ray v. Brenner, 12 Kansas 105;
Garnett v. Roper, 10 Ala. 842.

*Walter Biddle Saul,* with him *E. O. Michener,* for ap-
pellees.

OPINION BY RICE, P. J., Dec. 6, 1915:

This is an appeal by plaintiffs from judgment on di-
rected verdict in favor of defendants in an issue arising
out of a scire facias on a mechanic's lien, filed on March
23, 1912. Binding direction in favor of the defendants
was based on the provision of Section 36 of the Act of
June 4, 1901, P. L. 431, that: "any defense which would
defeat the action were it a personal one against the con-
tractor to recover for the particular work or materials
required to be done or furnished under the contract of
the owner......shall wholly defeat the claim." The
facts pertinent to the defense which the learned trial
judge held to be sufficient to defeat the plaintiffs' claim
are not in dispute and may be summarized as follows:
The materials for which the lien was filed were furnished
between July 5 and October 4, 1911, under a contract
between the plaintiffs and G. W. and J. M. Zane desig-
nated in the lien as contractors and builders. On Oc-
tober 14, 1911, G. W. and J. M. Zane made an assignment
for the benefit of creditors under the Pennsylvania In-
solvency Act of 1901, and about the same date an agree-
ment was entered into to which were parties: (1) G. W.
and J. M. Zane; (2) Harrison N. Deisel, designated as
trustee; (3) certain persons constituting a committee
representing all the creditors; (4) the various creditors
of G. W. and J. M. Zane including these plaintiffs. This
agreement provided an elaborate plan for the adminis-
tration of the insolvent estate through the trustee named
therein who was to act under the direction of a commit-
tee of creditors also named therein. The details of this
plan need not be recited. It is sufficient for present
purposes to refer to the clauses of the agreement em-

bracing and expressing the obligations and undertakings of the creditors. First. They promised and agreed "to refrain from instituting or prosecuting any action or actions, suit or suits, at law or in equity in the State court or Federal courts under the Federal Bankruptcy Act against the said G. W. and J. M. Zane for the collection of their claims"; secondly, they "do severally release, exonerate and discharge the said G. W. and J. M. Zane of and from any and all further liability on their part, or either of them individually or jointly on account of any of the said several claims, provided however should the said G. W. and J. M. Zane or either of them become adjudged bankrupts and this agreement be vacated, annulled or set aside this release shall also become void and of no further force or effect." It was admitted on the trial that the agreement was not vacated or annulled by G. W. and J. M. Zane being adjudged bankrupts but was still in force. These clauses of the agreement are clear and unambiguous. On their face they import not merely a promise to release, but a present release and exoneration of G. W. and J. M. Zane from liability to personal action. Counsel for the appellants throughout their elaborate and ingenious argument called this an "artificial" release, but it is not perceived why it should be so characterized. True, the debts were not wholly extinguished and as the learned trial judge says, the object of these provisions was "to make it possible for the trustee, in handling the property, to be absolutely free from embarrassment by reason of the fact that creditors might run in and file liens or bring suits or things of that sort." Nevertheless, the release to which all the parties agreed was actual and expressed, and its force and effect are not detracted from by reason of the fact that it was part of a plan for the convenient administration and distribution of the assets of the insolvent estate. In the sense that the release was expressly agreed to and did not arise by operation of law from payment or from the fact of insolvency and the assign-

ment under the insolvency statute, it was "artificial" but not in any other sense that we can perceive. It is argued that the sixth clause of the agreement whereby the creditors released the right to file liens against any of the real estate passing under the assignment taken in connection with the seventh clause in which it was provided that creditors "who hold collateral security or endorsements for the payment of their claims shall have all the rights and privileges which they possess in their said collateral or against the said endorsers at the signing of this agreement," tend to show that the right to file liens against property not belonging to the assigned estate was reserved. We have given consideration to the argument of appellants' counsel in support of this proposition, but are unable to adopt the conclusion at which they arrive, viz, that the right to file the lien in question was reserved. Having regard to the context the reservation to creditors of rights in collateral securities held by them may well be satisfied without extending it by doubtful construction, so as to include the right to file a lien against property owned by one who was not party to the agreement. Presumably, the parties to the agreement knew of the provisions of the Act of 1901 to which we have referred and, therefore, the plaintiffs must be presumed to have known that when they did that which would defeat a personal action against G. W. and J. M. Zane, their immediate debtors, they at the same time did that which would defeat their claim against property of A. M. Zane who was not a party to the agreement. Whether by any sort of ingenious stipulation in an agreement between contractor and subcontractor the right of the latter to maintain a mechanic's lien against property of a third person could be preserved, and the personal liability of the contractor, the principal debtor, be discharged, is a question that need not be discussed. It is sufficient to say that we find no substantial basis in the agreement for concluding that the parties intended to accomplish that difficult thing.

478, (1915).]          Opinion of the Court.

It is argued that the defendants have not a legal right to plead the agreement without showing payment to the contractor for the materials or some other equity. When it is remembered, as has often been said, that the owner of a building, or rather the building itself when erected by contract, stands very much in the relation of surety for the contractor, it needs no elaborate argument to show that the owner has an equity arising out of the subcontractor's release of the contractor, the principal debtor from personal liability. But we need not go into that question. The statutory right of a subcontractor to file a mechanic's lien rises no higher in equity than the owner's right to maintain a defense thereto which the statute gives. The defense set up here is a legal defense expressly given by the statute. The burden was not on the defendants to prove that it was supported by some special equity as well.

The assignments of error are overruled and the judgment is affirmed.